# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN SYMONIES,

    Plaintiff,

        v.

MARK McANDREW, JOHN TIGUE,
AND LACKAWANNA COUNTY,

    Defendants.

NO. 3:19-CV-0707

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Motion for Judgment on the Pleadings (Doc. 12) filed by Defendants Mark McAndrew ("McAndrew"), John Tigue ("Tigue"), and Lackawanna County (the "County") (collectively, where appropriate, "Defendants"). In his one-Count Complaint, Plaintiff John Symonies ("Symonies") claims that Defendants deprived him of his protected property interest in his employment as a County deputy sheriff without due process of law. Specifically, Symonies contends that he was constructively discharged from his employment following a "sham" pretermination due process hearing where the outcome was predetermined. Because Symonies was not deprived of a protected property interest without due process of law, Defendants' motion for judgment on the pleadings will be granted.

## I. Background

Symonies served as a County deputy sheriff for over thirty-three (33) years, *i.e.*, from 1984 until his employment ended in 2018. (*See* Compl., ¶ 7). Symonies was a union member. (*See id*. at ¶ 8).

On or about December 19, 2017, Symonies received a letter from Justin MacGregor ("MacGregor"), the County's human resource director, advising of a due process hearing concerning his alleged misconduct. (*See id*. at ¶ 10). That letter stated in part:

Sheriff McAndrew recently received a letter from Chief Guy Salerno of the Blakely Police Department, outlining several concerns his officers have raised about your conduct as a Deputy Sheriff. In the letter, Chief Salerno alleges that you often exhibit unprofessional behavior when his officers transport a prisoner to the processing center, including "snide comments" and tearing up officers' business cards. The practice of handing business cards to prisoners is a tool used by law enforcement officers to encourage cooperation in criminal investigations.

After receiving the letter from Chief Salerno, the Sheriff began an internal investigation and interviewed two Deputy Sheriffs with knowledge of these incidents occurring.

Deputy A stated that they have witnessed you urge prisoners not to cooperate with law enforcement, refer to charges for DUI and paraphernalia as "stupid charges," and throw away police officers' business cards.

Deputy B stated that they have witnessed you throw away police officers' business cards and tell prisoners not to cooperate with law enforcement. Deputy B also stated that they have witnessed you tell prisoners, "your arrest is not lawful and you should sue the officer."

(Defs.' Answer, Ex. "B").[1] The letter further advised that at the due process hearing, scheduled for December 22, 2017, Symonies would be "provided any and all evidence" supporting the County's contention that he committed misconduct and violated Sheriff's Office policy. (*Id.*). Symonies was informed that if the County's

---

[1] The December 19, 2017 due process hearing notice is attached to Defendants' Answer and Affirmative Defenses to the Complaint. (*See* Defs.' Answer, Ex. "B"). Symonies did not object to the consideration of this document on the present motion, (*see* Doc. 17, *generally*), and other cases in this District have found such due process letters to be properly considered on a Rule 12(c) motion. *See, e.g.*, *Calpin v. Lackawanna Cty.*, No. 16-2013, 2017 WL 590277, at *6 (M.D. Pa. Feb. 14, 2017) (Mannion, J.) (finding due process letter to be a "written instrument" in accordance with Rule 10(c), so it could be utilized in ruling on the defendants' motion for judgment on the pleadings)*; see also* Fed. R. Civ. P. 10(c) ("[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Rose v. Bartle*, 871 F.2d 331, 340 n.3 (3d Cir.1989) (exhibits that are considered "written instruments" and are "incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence, specifically, contracts, notes, and other 'writing[s] on which [a party's] action or defense is based.'").

information was accurate, he could be subject to "discipline, up to and including termination." (*Id*.). He was further told that he would "be given a full opportunity to give your side of the story and to clarify any inaccuracy. You are entitled to union representation at this hearing." (*Id*.).

On or about the same day he received the due process notice, Symonies contacted his union representative, deputy sheriff Joseph George ("George"), requesting his attendance at the due process hearing. (*See* Compl., ¶ 15).

Prior to the hearing, George met with Tigue. (*See id*. at ¶ 16). At that time, Tigue advised George that McAndrew would not be in attendance at the hearing, but that McAndrew instructed him how to handle the hearing. (*See id*. at ¶¶ 17-18). George inquired what this meant, and Tigue explained that he was told by McAndrew to give Symonies the option to retire or be terminated. (*See id*. at ¶ 19).[2]

Prior to the hearing, Symonies prepared a letter directed to McAndrew stating that he "would like to respond to the allegation and the Loudermill Hearing. I did Not commit those acts that's alleged." (Defs.' Answer, Ex. "C"). Symonies also requested that George be kept informed of the outcome of the investigation, and also that George conduct his own investigation into the allegations. (*See id*.).

At the due process hearing, George objected on the basis that the hearing was a sham because its outcome was predetermined. (*See id*. at ¶¶ 20-21). The County

---

[2]     Defendants deny that McAndrew instructed Tigue to give Symonies the option to retire or be terminated, and they also deny that this option was communicated to George. (*See* Defs.' Answer, ¶ 19). Of course, since a Rule 12(c) motion is evaluated under the same standard as a Rule 12(b)(6) motion, I accept the averments in the Complaint as true for purposes of ruling on the motion before me. *See, e.g.*, *Kaite v. Altoona Student Transp., Inc.*, 296 F.3d 736, 741 n.3 (W.D. Pa. 2017); *accord Allen v. Eckard*, No. 17-996, 2018 WL 2113234, at *1 (M.D. Pa. May 8, 2018) ("As a result of the obligation to view the facts and reasonable inferences in favor of the nonmovant, however, a court should treat any allegations in the answer that contradict the complaint as false."). The same holds true for other facts alleged in the Complaint that are denied by Defendants in their Answer. (*See, e.g.*, Defs.' Answer, ¶¶ 20-21).

proceeded with the hearing over George's objection. (*See id*. at ¶ 22). Symonies denied the allegations at the hearing. (*See id*. at ¶ 23). George also argued at the hearing that the allegations against Symonies were vague as they did not include the dates, times, or names of the complaining Blakely police officers. (*See id*. at ¶ 25). When asked for that information, MacGregor indicated that he could not provide those details and only stated that the alleged misconduct occurred within the past year. (*See id*. at ¶¶ 26-27). MacGregor explained at the hearing that the internal investigation involved interviewing two unidentified deputy sheriffs who observed Symonies throwing a business card in the trash. (*See id*. at ¶ 28). George also requested the date of that incident so he could review surveillance video to check if Symonies was working that day, but MacGregor could not provide specific information regarding the date and time of that alleged misconduct. (*See id*. at ¶¶ 29-30). At the conclusion of the hearing, George requested that no disciplinary action be taken against Symonies. (*See id*. at ¶ 31).

One hour after the hearing concluded, MacGregor phoned George and advised that after speaking with McAndrew, the outcome of the hearing was the same as what George had been told earlier - Symonies could either retire that day or be fired. (*See id*. at ¶ 32). In response, George told MacGregor it was not his place to inform Symonies of the County's decision. (*See id*. at ¶ 33).

On or about January 2, 2018, Tigue informed Symonies that he could either retire or he would be terminated. (*See id*. at ¶ 35). Symonies submitted a letter of resignation and retirement the next day. (*See id*. at ¶ 36; *see also* Defs.' Answer, Ex. "A").

Based on the foregoing, Symonies filed the instant action on April 26, 2019. (*See* Compl., *generally*). In his one-Count Complaint, Symonies contends that Defendants deprived him of his property interest in his employment as a County deputy sheriff without due process of law. (*See id*., *generally*). More particularly, Symonies alleges that he was "constructively discharged" and that the due process

4

hearing he was provided was a "sham." (*See id*., *generally*).

Defendants filed their Answer and Affirmative Defenses to the Complaint on July 1, 2019. (*See* Defs.' Answer, *generally*). Two days later, Defendants filed the instant motion for judgment on the pleadings. (*See* Doc. 12, *generally*). That motion has now been fully briefed, so it is ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate "if the movant clearly establishes that there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). "'A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'" *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revel v. Port Auth. of NY, NJ*, 598 F.3d 128, 134 (3d Cir. 2010)). "In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Id*. at 417-18 (citing *Allah v. Al–Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000)). "In ruling on a motion for judgment on the pleadings, 'the court reviews not only the complaint but also the answer and written instruments attached to the pleadings.'" *Barnard v. Lackawanna Cnty.*, 194 F. Supp. 3d 337, 340 (M.D. Pa. 2016) (quoting *Brautigam v. Fraley*, 684 F. Supp. 2d 589, 591 (M.D. Pa. 2010)); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.").

## III. Discussion

Symonies' sole claim in this action is for an alleged deprivation of a protected

property interest in his County employment as a deputy sheriff without due process of law, *i.e.*, a procedural due process claim. The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property without due process of law[.]" U.S. Const. amend XIV, § 1. "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Defendants challenge both elements of Symonies' procedural due process claim.

**A.      Property Interest.**

Defendants first contend that Symonies lacked a property interest in his continued employment with the County as a deputy sheriff. "Whether a person has a legitimate entitlement to - and hence a property interest in - his government job is a question answered by state law." *Hill*, 455 F.3d at 234. "To have a property interest in a job, however, a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).

Here, Symonies alleges that as a union member, he had a protected property interest in his employment as a deputy sheriff. (*See* Compl., ¶¶ 8-9). While Defendants observe that the Collective Bargaining Agreement (the "CBA") governing Symonies' employment does not contain a "just cause" termination provision, (*see* Doc. 14, 7 n.1; *see also* Defs.' Answer, Ex. "D"), they opine that this is "immaterial to the instant analysis[.]" (Doc. 14, 7 n.1). Rather, Defendants contend that Symonies lacked a protected interest in his continued employment in light of Section 1620 of the

Pennsylvania County Code, 16 P.S. § 1620. (*See id.* at 7-16).

Section 1620 states:

> The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes: Provided, however, That with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. *The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.*

16 P.S. § 1620. Under Pennsylvania law, the county sheriff is a "county officer." *See, e.g.*, *Erie Cty. v. Pa. Labor Relations Bd.*, 908 A.2d 369, 373-74 (Pa. Commw. 2006); *see also* Pa. Const. art. IX, § 4 ("County officers shall consist of commissioners, controllers or auditors, district attorneys, public defenders, treasurers, sheriffs, registers of wills, recorders of deeds, prothonotaries, clerks of the courts, and such others as may from time to time be provided by law.").

Defendants argue that pursuant to § 1620, McAndrew had unqualified authority regarding personnel decisions in his office as Sheriff. (*See* Doc. 14, 9). Moreover, to the extent that the pertinent CBA arguably infringed upon those rights, Defendants insist that McAndrew properly objected to those provisions in order to preserve his § 1620 rights. (*See id.* at 10). As to that, Defendants point to an April 16, 2015 letter from the Sheriff's Solicitor in which McAndrew took "issue with th[e] non-economic contract provisions that infringe upon his rights under the Pennsylvania Constitution and Section 1620 of the County Code." (Defs.' Answer, Ex. "E"). This, say Defendants, demonstrates that McAndrew retained discretion to discharge deputy sheriffs such as Symonies, thereby preventing Symonies from demonstrating that he had a constitutionally protected property interest in his continued County employment.

7

(*See* Doc. 14, 8-16).    Specifically, Defendants point to the Pennsylvania Commonwealth Court's decision in *Troutman v. AFSCME*, 87 A.3d 954 (Pa. Commw. Ct. 2014) as support for their view that McAndrew's objection to the purported infringement on his § 1620 rights cannot be construed as a concession to those infringing terms.  (*See* Doc. 14, 10-11).

Symonies in opposition insists that Defendants reliance on *Troutman* is misplaced.  Instead, Symonies is of the view that the Commonwealth Court's more recent decision in *Schuylkill County v. Pennsylvania Labor Relations Bd.*, 197 A.3d 1256 (Pa. Commw. Ct. 2018) distinguished *Troutman* and is directly applicable to the matter *sub judice*.  (*See* Doc. 17, 8-11).  Symonies also acknowledges that McAndrew objected to the CBA in April 2015, but emphasizes that "McAndrew tacitly consented to the county commissioners negotiating his rights away by not appealing the collective bargaining agreements or interest arbitration award." (*Id*. at 11 n.1).

In *Troutman*, various Berks County row officers filed a declaratory judgment action claiming that certain provisions of a collective bargaining agreement relating to discharge and discipline of county employees and the procedures for filling vacant positions violated their statutory rights under § 1620 of the County Code.  *See Troutman*, 87 A.3d at 955.  With respect to a collective bargaining agreement that was being negotiated in 1998, the county's clerk of courts sent a letter to the Berks County Commissioners indicating that he did not authorize them to negotiate on his behalf with respect to hiring, termination, or supervision of employees in his office.  *See id*. at 956.  Several other row officers sent similar letters thereafter.  *See id*. at 957. Nonetheless, despite these objections, the County Commissioners negotiated an agreement containing provisions disputed by the row officers.  *See id*.  The row officers commenced litigation, and the trial court held that they were bound by the disputed provisions until they were amended through collective bargaining.  *See id*. at 958.

On appeal, the Commonwealth Court reversed the decision of the trial court and

remanded with instructions to the trial court to enter declaratory judgment in favor of the row officers. *See id*. at 965. The Commonwealth Court explained:

> [T]he County Commissioners are the sole representatives of Row Officers for purposes of bargaining under PERA. In fulfilling that responsibility, the County Commissioners may enter into a CBA that limits the hiring, discharge and supervision rights of a Row Officer, but only where Row Officers have tacitly or expressly consented. Here, because Row Officers have expressly asserted their Section 1620 rights and objected to the Disputed Provisions of the CBA, the County Commissioners lacked authority to bargain those rights away. They should have submitted the Disputed Provisions to interest arbitration. Had this been done and a Row Officer objected to the award, it would have become incumbent upon the County Commissioners or the Row Officer to appeal the interest arbitration award in order to preserve Section 1620 rights.

*Id*. at 964. Citing its prior precedent, the Commonwealth Court made clear that "where a row officer has tacitly acquiesced to a limit on his Section 1620 rights, the county commissioners have the authority to bargain them away. If there is no such acquiescence, the county commissioners lack authority to bind a row officer to a provision that limits his hiring, discharge, and supervision rights." *Id*. at 965. And, on the facts of the case, the Commonwealth Court concluded that it could not be held that the row officers tacitly acquiesced to the disputed provisions. *See id*.

In *Schuylkill County*, prior to the execution of the 2011-2015 collective bargaining agreement, the solicitor for the county was its chief negotiator. *See Schuylkill Cty.*, 197 A.3d at 1258. At that time, the solicitor did not seek the input of elected row officers regarding their willingness to be governed by the agreement, nor did the union or the county obtain the clerk of court's consent to be governed by the agreement. *See id*. at 1259. None of the row officers, including the clerk of court, inquired with the county about their § 1620 rights. *See id*. The 2011-2015 agreement contained limits on row officers' rights to suspend, discharge, or discipline an employee. *See id*. at 1258. On January 4, 2016, a new clerk of court took office, and the next day she notified the county and the union by letter of her view that several provisions infringed on her § 1620 rights. *See id*. at 1259. She also objected to the

continuation of any provision that was contrary to those rights. *See id*. The new clerk of court dismissed two employees shortly thereafter, prompting the union to file grievances challenging those terminations. *See id*. The county refused to engage in arbitration on the grounds that the provisions in the collective bargaining agreement infringed upon the clerk of court's rights under § 1620. *See id*. The hearing examiner issued a proposed decision finding that the county unlawfully refused to bargain in good faith by refusing to arbitrate and that it committed an unfair labor practice. *See id*. The Pennsylvania Labor Relations Board made the proposed decision final, and the county petitioned the Commonwealth Court for review relying on *Troutman*. *See id*. at 1260.

The Commonwealth Court affirmed the order of the Pennsylvania Labor Relations Board. *See id*. at 1264. *Troutman*, explained the *Schuylkill County* court, "established that once a row officer asserts Section 1620 rights, the county may not bargain them away. *Troutman* did not hold that a county can refuse to follow the terms of an existing collective bargaining agreement, to which the row officer did not object at the time the contract was negotiated." *Id*. at 1262. So, even though the 2011-2015 collective bargaining agreement was negotiated prior to the clerk of court taking office, that agreement remained in effect until a new one is reached. *See id*. at 1263.

Also instructive to the matter *sub judice* is *Rebert v. York County Detectives Association*, 909 A.2d 906 (Pa. Commw. Ct. 2006). There, following the submission of a bargaining impasse to interest arbitration between the York County Commissioners on behalf of the District Attorney's office and the union representing county detectives in that office, the parties entered into an award in the form of an agreement. *See id*. at 908. The agreement contained, among other items, a provision governing "hours of work." *Id*. The District Attorney's office subsequently hired a detective to a work schedule that deviated from that set forth in the collective bargaining agreement. *See id*. The union filed a grievance, and the arbitrator ruled

in favor of the union. *See id.* at 909. The District Attorney appealed the award to the Court of Common Pleas, which affirmed the award and noted that if the District Attorney believed a § 1620 violation occurred, "he should have appealed the interest arbitration award. The Court could have properly addressed the claim at that point." *Id.* The District Attorney appealed the trial court's decision to the Commonwealth Court. *See id.*

On appeal, the Commonwealth Court addressed the District Attorney's claim that the arbitrator exceeded his authority by entering an award which violated his rights under § 1620. *See id.* at 911. Specifically, the District Attorney argued that "the CBA is unenforceable in this particular case because the county commissioners lacked the authority to bargain away his Section 1620 rights." *Id.* The Commonwealth Court disagreed, explaining:

> [T]he Commissioners were obligated to submit, as they did, the proposal regarding the regular work schedule to interest arbitration and the District Attorney was obliged to appeal the interest arbitration consent award in order to assert the challenge based on Section 1620 that he presses in the current appeal. There having been no challenge to the legality of the interest arbitration award, the District Attorney is powerless now to repudiate its terms. Hence, in interpreting the CBA and enforcing the work schedule provision, the arbitrator did not exceed the scope of his authority.

*Id.* at 912.

Based on the present record, the County and the Lackawanna County Deputy Sheriffs Association bargained to an impasse regarding a successor agreement that expired on December 31, 2013. (*See* Defs.' Answer, Ex. "D", 11). The dispute was submitted to interest arbitration and evidentiary hearings were held in September 2013. (*See id.*). Thereafter, McAndrew was elected County Sheriff. (*See* Defs.' Answer, Ex. "E"). And, before the interest arbitration award was finalized, McAndrew, through the Sheriff's Office solicitor, advised at least one of the arbitrators, *i.e.*, the County-appointed arbitrator, of his "objections to [the] newly proposed collective bargaining agreement" with respect to the "non-economic contract

provisions that infringe upon his rights under the Pennsylvania Constitution and Section 1620 of the County Code." (*Id*.). The Sheriff's Office solicitor was subsequently advised by the County-appointed arbitrator that he did "not believe that any of the Award or changes in the collective bargaining agreement have infringed on the Sheriff's rights," but he welcomed the solicitor's "suggested text" if he wanted filed a "concurring opinion concerning the 1620 rights[.]" (Defs.' Answer, Ex. "D", 17). No concurring opinion appears in the record. (*See id*., *generally*). The interest arbitration award between the County and the Deputy Sheriff's Association was ratified by the County Board of Commissioners at a regular meeting held on July 1, 2015. (*See id*. at 10).

Defendants argue that given these facts, McAndrew objected to the provisions that purportedly infringed on his § 1620 rights, so the collective bargaining agreement is unenforceable to the extent that it impairs his power to supervise, hire, and fire personnel. (*See* Doc. 14, 6-16). But, the above-cited case law indicates that objecting to an interest arbitration award, by itself, is generally insufficient to preserve § 1620 rights. Rather, an appeal of the interest arbitration award is required to protect such rights. *See Troutman*, 87 A.3d at 964; *Schuylkill Cty.*, 197 A.3d at 1262; *Rebert*, 909 A.2d at 912.[3] While McAndrew advised the County-appointed arbitrator of his objection to the award, (*see* Defs.' Answer, Ex. "E"), it is not clear from the present

---

[3]     The Commonwealth Court has also recognized that a failure to appeal an interest arbitration award does not foreclose a subsequent challenge based on § 1620 where the collective bargaining agreement at issue contains a reopener provision. *See Lackawanna Cty. v. Lackawanna Cty. Deputy Sheriff's Ass'n*, No. 487 C.D. 2007, 2008 WL 9405103, at *13 (Pa. Commw. Ct. May 13, 2008) (distinguishing *Rebert* and stating that "[u]nlike the district attorney in *Rebert*, the Sheriff here challenged the legality of the interest arbitration award by pursuing the specific remedy available to him under that award. Unlike the terms of the CBA at issue in *Rebert*, here the disputed provision contained a reopener, which stated that either party retained the ability to request reopening of the provision . . . ."). No such provision - or invocation of same - has been pointed to by Defendants in the matter *sub judice*.

record that the County Commissioners were informed of McAndrew's objections to the interest arbitration award. Moreover, *Troutman*, *Schuylkill County*, and *Rebert* all similarly indicate that to preserve § 1620 rights, the County Commissioners, or if they refused, McAndrew, should have appealed the interest arbitration award. *See Troutman*, 87 A.3d at 964 ("They should have submitted the Disputed Provisions to interest arbitration. Had this been done and a Row Officer objected to the award, it would have been incumbent upon the County Commissioners or the Row Officer to appeal the interest arbitration award in order to preserve Section 1620 rights."); *Schuylkill Cty.*, 197 A.3d at 1262 ("Where the row officers objected to the interest arbitration award, then the county commissioners had to appeal the award or allow the row officers to appeal."); *Rebert*, 909 A.2d at 912 ("the District Attorney was obliged to appeal the interest arbitration consent award in order to assert the challenge based on Section 1620 that he presses in the current appeal."). The record as it stands, though, does not reflect an appeal of the interest arbitration award by either the County Commissioners or McAndrew. At this point then, I cannot find that McAndrew preserved his § 1620 rights.[4] Because this is the only challenge advanced by Defendants in their motion regarding Symonies' alleged property interest in continued County employment, judgment on the pleadings is not warranted on this ground.

## B.    Due Process of Law.

Second, Defendants argue that the procedural due process claim fails because the process afforded Symonies was constitutionally adequate. "'[D]ue process is

---

[4]    Defendants also point to the CBA as support for its claim that the Sheriff's authority under § 1620 was specifically preserved by the agreement. (*See* Doc. 18, 7 (citing Defs.' Answer, Ex. "D", 22 ("shall be exercised consistent with statutory authority, including, but not limited to Section 1620 of the County Code, and controlling case law."))). Because the record is not sufficiently developed for me to resolve this issue, I decline to pass on it here. I simply note, however, that there is authority finding similar language insufficient by itself to preserve § 1620 rights. *See, e.g.*, *Rebert*, 909 A.2d at 909-122 & n.5; *Cty. of Lehigh v. Lehigh Cty. Deputy Sheriffs' Ass'n*, 52 A.3d 376, 379, 383-84 (Pa. Commw. 2012)

flexible and calls for such procedural protections as the particular situation demands.'" *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009) (quoting *Gilbert v. Homar*, 520 U.S. 924, 930, 117 S. Ct. 1807, 138 L.Ed. 2d 120 (1997) ). "A plaintiff claiming a due process violation while relying upon state law to establish his property right, looks to federal law to define procedural due process." *Perri v. Aytch*, 724 F.2d 362, 366 (3d Cir. 1983) (quotation and citation omitted). At a minimum, a deprivation must "be preceded by notice and an opportunity for a hearing." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

> Prior to termination, *Loudermill* requires "a pretermination opportunity to respond, coupled with post-termination administrative [or judicial] procedures." *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987) (quoting *Loudermill*, 470 U.S. at 546, 105 S. Ct. 1487). The pretermination hearing, "though necessary, need not be elaborate," and it must at least entail: 1) "oral or written notice of the charges," 2) "an explanation of the employer's evidence," and 3) "an opportunity for the employee to tell his side of the story." *Loudermill*, 470 U.S. at 545, 105 S.Ct. 1487.

*Moffitt v. Tunkhannock Area Sch. Dist.*, 160 F. Supp. 3d 786, 793 (M.D. Pa. 2016).

It is clear from the Complaint that Symonies received predeprivation notice and an opportunity to be heard. (*See* Compl., *generally*). In particular, Symonies alleges that on December 19, 2017, he was advised of a due process hearing regarding his alleged misconduct that was scheduled for December 22, 2017. (*See id*. at ¶ 10; *see also* Defs. Answer, Ex. "B"). Symonies does not argue that the timing of this notice was insufficient, (*see* Doc. 17, 11-13), nor could he. *Cf. Gniotek v. City of Philadelphia*, 808 F.2d 241, 244 (3d Cir. 1986) ("in the employee termination context, notice served at the predeprivation hearing satisfies the demands of due process."). Similarly, while Symonies was not provided the identity of the complaining Blakely police officers or the deputy sheriffs interviewed, (*see* Compl, ¶¶ 11, 14), he alleges that he was given - both before and at the December 22, 2017 hearing - an explanation of the County's evidence against him. (*See id*. at ¶¶ 10-14, 26-28; *see also* Defs.'

Answer, Ex. "B"). The description of the evidence against Symonies forming the basis of the misconduct allegations was sufficient to satisfy the requirements of due process. *See McDaniels v. Flick*, 59 F.3d 446, 457 (3d Cir. 1995) ("pretermination notice of the charges and evidence against an employee need not be in great detail as long as it allows the employee the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges."); *cf. Fraternal Order of Police Lodge No. 5 v. Tucker*, 868 F.2d 74, 80 (3d Cir. 1989) (holding that, although the discharged police officers were sufficiently informed of disciplinary action against them and given an opportunity to state their objections, they were nevertheless deprived of a "meaningful" pre-termination hearing because "they were not told anything specific about . . . the allegations being investigated or the evidence regarding the allegation"). Finally, Symonies asserts that he was given the opportunity to respond to the claimed misconduct. (*See* Compl., ¶ 23). This was constitutionally adequate. *See Loudermill*, 470 U.S. at 545-46, 105 S. Ct. 1487 (pretermination hearing "need not be elaborate" and the "the pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions - essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.").

Symonies' claim is instead centered on the allegation that the due process hearing was a "sham" because its outcome was predetermined. (*See* Compl., ¶¶ 19-22, 32, 34). Symonies points to the fact that his union representative was informed in advance of the hearing that Symonies would be given the option to retire or be terminated. (*See id*. at ¶ 19). At the conclusion of the hearing, Symonies was advised that the predetermined outcome remained the County's decision: he could retire or be terminated. (*See id*. at ¶ 32). As a result, Symonies "submitted to the Defendants' compelled retirement determination." (*Id*. at ¶ 36). In other words, Symonies claims he was constructively discharged as a result of the sham due process proceeding. (*See*

*id*. at background ("Sham due process hearing and constructive discharge")). Although Symonies argues these theories as one, they implicate different issues and standards, so I address them separately.

With respect to his claim that the pretermination hearing was a sham, the Third Circuit has stated that "in the case of an employment termination case, due process does not require the state to provide an impartial decisionmaker at the pre-termination hearing. The state is obliged only to make available the means by which the employee can receive redress for the deprivations." *McDaniels*, 59 F.3d at 459 (3d Cir. 1995) (quotation, citations, and alterations omitted); *see also Heneghan v. Northampton Cmty. Coll.*, 493 F. App'x 257, 259-260 (3d Cir. 2012) ("Generally, due process does not require an impartial decisionmaker at the pretermination hearing provided the state affords a neutral tribunal at the post-termination stage."); *Deluzio v. Monroe Cnty.*, No. 00-1220, 2006 WL 3098033, at *16 (M.D. Pa. Oct. 30, 2006) ([d]ue process does not require a neutral, impartial decision-maker during the pre-termination hearing, provided the terminated employee has adequate post-termination proceedings before an impartial decision-maker."). Thus, "a discharged employee cannot claim in federal court that he has been denied due process because his pretermination hearing was held by a biased individual where he has not taken advantage of his right to a post-deprivation hearing before an impartial tribunal that can rectify any possible wrong committed by the initial decisionmaker." *McDaniels*, 59 F.3d at 460. The *McDaniels* court explained:

> Usually, an employment termination decision is made initially by the employee's direct supervisor or someone working in the same organization as the employee - a sensible approach given that such person often is already familiar with the employee's abilities and shortcomings as well as the needs and interests of the employer organization. Yet, these individuals are also likely targets for claims of bias or improper motive simply because of their positions. For example, personality discord may lead to charges that a direct supervisor was biased. . . . While these charges may have merit in certain cases, to require that the state ensure an impartial pretermination hearing in every instance would as a practical matter require that termination decisions initially

be made by an outside party rather than the employer as charges of bias always could be made following an in-house discharge. Not only is this procedure unduly cumbersome, but it also may be unreasonably invasive for the employee, who may want to keep the circumstances of his discharge private. On the whole, we do not think that such excessive pretermination precaution is necessary where the state provides a neutral tribunal at the post-termination stage that can resolve charges of improper motives.

*Id*.

Symonies presents a relative straightforward application of *McDaniels*. As explained above, Symonies was provided notice of the allegations against him, was provided a hearing, and was given an opportunity to be heard. So long as Defendants afforded him the right to a post-deprivation hearing before an impartial tribunal, an issue discussed below, Symonies does not present a plausible claim for relief based on the alleged bias in the "sham" pre-deprivation hearing.

This is the case even accepting as true, as I must on the present motion, that the outcome of the December 22, 2017 hearing was predetermined. On that point, I am aware of out-of-circuit authority finding that a *Loudermill* hearing with a predetermined or preordained outcome can violate an employee's due process rights. *See*, *e.g.*, *Ryan v. Illinois Dep't of Children & Family Servs.*, 185 F.3d 751, 762 (7th Cir. 1999) ("Due process requires that, prior to termination, an employee be given the chance to tell her side of the story, and that the agency be willing to listen. Otherwise, the opportunity to respond required by *Loudermill* is no opportunity at all. . . . A plaintiff who can introduce evidence that the decision has already been made and any hearing would be a sham is entitled to go forward with a procedural due process claim."); *Matthews v. Harney Cty.*, 819 F.2d 889, 893 (9th Cir. 1987) ("Due process of law [is not present] where the [employer] has gone through the mechanics of providing a hearing, but the hearing is totally devoid of a meaningful opportunity to be heard."); *Levesque v. Town of Vernon*, 341 F. Supp. 2d 126, 134 (D. Conn. 2004). But cases likes these, as two district courts in this Circuit have recognized, are at odds with the Third Circuit's decision in *McDaniels*, *see Barnett v. Penn Hills Sch. Dist.*,

No. 16-274, 2016 WL 2895136, at *8 (W.D. Pa. May 18, 2016) (McVerry, J.) (finding *Ryan*'s "holding runs headlong into the reasoning in *McDaniels*"); *Luciani v. City of Philadelphia*, No. 10-2918, 2013 WL 5468000, at *11 (E.D. Pa. Oct. 1, 2013) (O'Neill, J.), which rejected the argument that the district court erred "in refusing to allow [the plaintiff] to show at trial that the pretermination procedure afforded him was a sham." *McDaniels*, 59 F.3d at 458; *see also id*. at 461 n.8 ("Of course, the fact that they did not accept his responses is irrelevant for purposes of determining whether his procedural due process rights were offended.").  Indeed, in affirming the district court in *Luciani*, the Third Circuit observed - albeit in a divided, non-precedential opinion - that so long as adequate post-termination proceedings are provided, the fact that "the pre-termination hearing to which [the plaintiff] was subjected had a predetermined outcome is ultimately immaterial to his procedural due process claim." *Luciani v. City of Philadelphia*, 643 F. App'x 109, 112 (3d Cir. 2016); *see also id*. at 113 ("Merely rejecting an employee's claim at a pre-termination proceeding is not a constitutional violation, so long as adequate post-termination remedies exist to satisfy procedural due process."); *accord Barnett v. Penn Hills Sch. Dist.*, 705 F. App'x 71, 73-74 (3d Cir. 2017) (affirming dismissal of employee's procedural due process claim alleging, *inter alia*, that his hearing was prejudged and noting that "once some process is provided, we have held that de novo review can cure any claimed bias in appropriate cases.").

That leads to the requirement that Symonies must have availed himself of available post-deprivation proceedings or he cannot sustain a procedural due process claim arising from the purported flaws in his pre-deprivation hearing.  "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

Defendants contend, in accordance with *McDaniels*, that Symonies had the opportunity for a post-termination hearing, namely, by way of the grievance/arbitration

procedures provided for in the CBA or pursuant to Pennsylvania's Local Agency Law, 2 Pa. C.S.A. §§ 553-554, 752-754. (*See* Doc. 14, 20-26; *see also* Defs.' Answer, Ex. "D", 56-58). While Symonies disputes Defendants' claim that he could have sought relief under Pennsylvania's Local Agency Law on the basis that his "constructive discharge" was not an adjudication under that law, (*see* Doc. 17, 11-13), he puts forth no opposition to Defendants' reference to the CBA's provision setting forth a grievance/arbitration process. (*See id.*, *generally*).

"A public employer may discharge its due process obligations by providing for facially adequate post-deprivation grievance procedures, even if the initial determination resulting in the deprivation was biased." *Skrutski v. Marut*, 288 F. App'x 803, 809 (3d Cir. 2008) (citing *Dykes v. Se. Pa. Transp. Auth.*, 68 F.3d 1564, 1571 (3d Cir. 1995); *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir. 1983)). As a result, when "there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin*, 227 F.3d at 116. Because there was an adequate post-deprivation grievance/arbitration procedure provided for in the CBA, (*see* Defs.' Answer, Ex. "D", 56-58), that was not alleged to have been utilized by Symonies, he has not presented a plausible due process claim. *See, e.g.*, *Dykes*, 68 F.3d at 1572 (finding failure to state a claim for due process violation where plaintiff failed to request arbitration that was available to him, even when the "plaintiff alleged that the defendants acted in concert to deprive him both of a meaningful hearing and of arbitration" because the arbitration process had safeguards to protect against a diminishment of process that the alleged bias might result in); *Companiony v. Murphy*, 658 F. App'x 118, 122 ("Because Companiony failed to take advantage of available post-termination processes, and has also not shown that such processes were inadequate, she cannot bring a claim for failure to provide procedural due process relating to her post-termination proceedings."); *Luciani*, 643 F. App'x at 112 (due process claims failed where the plaintiff failed to file a union grievance after the pre-

termination proceeding found against him because that provided a "constitutionally sufficient avenue[ ] for relief").

Nor, for two reasons, can Symonies save his claim by calling his resignation a "constructive discharge."[5] For one, he has not pled facts to support such a theory. To determine whether Symonies retired voluntarily or was constructively discharged requires consideration of the "'surrounding circumstances to test the ability of the employee to exercise free choice.'" *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999) (quoting *Scharf v. Dep't of the Air Force*, 710 F.2d 1572, 1574 (Fed. Cir. 1983)). "Employee resignations and retirements are presumed to be voluntary." *Id*. (citing *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1544 (8th Cir. 1992)).

> This presumption remains intact until the employee presents evidence to establish that the resignation or retirement was involuntarily procured. If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights.

*Id*. (citation and internal citation omitted). In *Lenehy*, the Third Circuit pointed to "two circumstances in which an employee's resignation or retirement will be deemed involuntary for due process purposes: (1) when the employer forces the resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." *Id*. at 228 (citing *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995)).

Symonies does not allege that Defendants misrepresented or deceived him as to any material facts which led him to resign. (*See* Compl., *generally*). Instead, his contention is that he was forced to retire under the threat of termination, *i.e.*, his resignation was coerced. (*See id*. at ¶ 36 (submitting to the "compelled retirement

---

[5]    While he characterizes his resignation as a "constructive discharge," Symonies reaches this legal conclusion without application or analysis of any case law governing such a claim. (*See* Doc. 17, *generally*).

determination")).

This claim is viewed under an "objective standard," meaning "the ultimate issue is not what [Symonies himself] felt or believed, but whether a reasonable person under the circumstances 'would have felt compelled to resign.'" *Judge v. Shikellamy Sch. Dist.*, 905 F.3d 122, 125 (3d Cir. 2018) (quoting *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010)). The Third Circuit has identified a "non-exhaustive list of factors" that provide "a useful framework" for determining whether a resignation was obtained by coercion or duress:

> (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

*Id.* (alteration omitted) (quoting *Hargray*, 57 F. 3d at 1598).

The facts here do not reflect that the retirement decision was obtained by coercion. First, Symonies was given an alternative to retirement - proceeding to a *Loudermill* hearing (which he did) and face discipline or termination. (*See* Compl., ¶¶ 10, 19; Defs.' Answer, Ex. "B"). Following the hearing, Symonies was again given the option to retire or be terminated. (*See* Compl., ¶¶ 32, 35). Symonies ultimately submitted his resignation. (*See id.* at ¶ 36). "[R]esignations can be voluntary even where the only alternative to resignation is facing possible termination for cause . . . ." *Hargray*, 57 F.3d at 1568; *see also Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010) ("He could retire with full benefits or appear before the Board and potentially be vindicated; the latter option, however, obviously risked termination and loss of his benefits if the charges were substantiated. But this is not the kind of choice that makes an otherwise voluntary resignation involuntary. . . . That Palka decided to resign rather than risk an unfavorable Merit Board decision does not make his resignation involuntary. The district court was right to dismiss his procedural due-process claim."); *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 174 (4th Cir.

1988) ("the mere fact that the choice is between comparably unpleasant alternatives - *e.g.*, resignation or facing disciplinary charges - does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary. This is so even where the only alternative to resignation is facing possible termination for cause, unless the employer actually lacked good cause to believe that grounds for termination existed.").

Second, Symonies offered his resignation letter (1) over a week after his hearing where it was "predetermined" that he would be terminated if he did not retire, and (2) a day after he spoke with Tigue. This was a reasonable time for Symonies to make an informed decision. *See*, *e.g.*, *Rhoads v. Bd. of Educ. of Mad River Local Sch. Dist.*, 103 F. App'x 888, 895 (6th Cir. 2004) (seven hours to make decision was sufficient); *Young v. Annarino*, 123 F. Supp. 2d 915, 926 (W.D.N.C. 2000) (weekend was adequate time to decide whether to resign); *Venero v. City of Tampa*, 830 F. Supp. 1457, 1460 (M.D. Fla. 1993) (two days was enough time "to think and reason before making the decision to resign"). And third, the facts indicate that Symonies understood the choice he was given. While nothing indicates that Symonies had the advice of counsel or that he was permitted to choose his effective retirement date, the pertinent factors do not plausibly show that Symonies' retirement was the product of coercion or duress.

Finally, even if Symonies had a property interest in his deputy sheriff position and accepting he was compelled by Defendants to retire, he still did not utilize the grievance process available to him. Symonies is therefore unable to prove a due process violation when he was allegedly "forced to retire." *See Turinski v. Local 104 Int'l Ass'n of Fire Fighters*, 269 F. App'x 184, 188 (3d Cir. 2008) (rejecting "forced to retire" argument where the employees "failed to exhaust the grievance process available to them. Neither appellant took his grievance to the mayor, and even if they perceived this step as futile because they felt the mayor was behind their demotions, neither pursued the grievance to arbitration despite being entitled to do so under the

CBA."); *see also Leheny*, 183 F.3d at 227-29; *Parks v. Terrebonne Parish Consolidated Gov't*, 759 F. App'x 220, 226 (5th Cir. 2019) *Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991) ("It is true that the municipal civil service commission refused to allow plaintiff to be heard because it interpreted the plaintiff's retirement as voluntary, but this refusal does not constitute a due process violation because an adequate state corrective judicial process exists."). The due process claim based on a constructive discharge theory fails for this reason as well.

Symonies, therefore, has not pled a plausible basis to conclude that the procedures available to him failed to satisfy the requirements of due process. Defendants are entitled to judgment on the pleadings pursuant to Rule 12(c).

## IV. Conclusion

For the above stated reasons, Defendants' motion for judgment on the pleadings will be granted. In granting "a motion for judgment on the pleadings pursuant to Fed. R. Civ .P. 12(c), the [Court's] order should enter judgment in favor of [the movant] instead of dismissing [the non-movant's] claims." *Dukes v. Lancer Ins. Co.*, 390 F. App'x 159, 163 (3d Cir. 2010) (footnote omitted). As such, judgment in favor of Defendants will be entered on Count One of the Complaint.

An appropriate order follows.


September 16, 2019                          /s/ A. Richard Caputo
Date                                        A. Richard Caputo
                                            United States District Judge